1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                         Alexandria Division




-------------------------------:
                               :
UNITED STATES OF AMERICA        :
                               :
                               :
     -vs-                       :          Case No. 1:13-cr-278
                               :
                               :
RONNIE P. HOLMES,               :
              Defendant.        :
                               :
-------------------------------:




                         SENTENCING HEARING

                         January 24, 2014

              Before:    Liam O'Grady, USDC Judge
```

APPEARANCES:

Stacey K. Luck and Michael J. Frank,
Counsel for the United States

Alan H. Yamamoto, Counsel for the Defendant

The Defendant, Ronnie P. Holmes, in person

1              THE CLERK:  Criminal case number 1:13-cr-278, the
2  United States of America versus Ronnie Pierre Holmes.
3              MS. LUCK:  Stacey Luck and Michael Frank for the
4  United States.
5              MR. ROBERTSON:  Alan Yamamoto for Mr. Holmes.
6              THE COURT:  All right.  This comes on for sentencing,
7  and also for a motion filed to recuse me from further action in
8  the case.
9              So, we should hear that first.  Mr. Yamamoto.
10             MR. ROBERTSON:  We will rest on our papers, Your
11 Honor.
12             THE COURT:  All right.  The Government want to be
13 heard on the recusal motion?
14             MS. LUCK:  No, Your Honor.  The Government will also
15 rest on its papers.
16             THE COURT:  All right.  Well, I'm going to deny the
17 motion to recuse me from the sentencing and resolution of this
18 case.
19             Mr. Holmes was upset because he had some papers at
20 his disposal when I denied his motion to vacate his plea.  I
21 told him specifically to put any motion that he had in writing.
22 He has declined to do so.  And I don't find that there is any
23 justification for recusal of the Court.
24             So, the motion is denied.  And your exception is
25 noted.

3

1          So, we're here for sentencing.  Are the parties ready
2   to proceed?
3          MR. YAMAMOTO:  Yes, Your Honor.
4          MS. LUCK:  Yes, Your Honor.
5          THE COURT:  All right.  Mr. Yamamoto, any objection
6   to the report or the Guideline calculation within the report?
7          MR. YAMAMOTO:  No, Your Honor.
8          THE COURT:  All right.  Mr. Holmes, have you gone
9   over the report, sir?
10         THE DEFENDANT:  The report?
11         THE COURT:  The presentence report.
12         NOTE:  A discussion is had between the defendant and
13  his counsel.
14         THE DEFENDANT:  Can you give me a moment?
15         THE COURT:  Yes, sir.
16         THE DEFENDANT:  Thank you.
17         NOTE:  The discussion continues between the defendant
18  and his counsel.
19         THE COURT:  Have you gone over the report, sir?
20         THE DEFENDANT:  Give me one second.
21     Yeah, yeah, I remember it.
22         THE COURT:  Any corrections, additions you want to
23  make to the report, sir?
24         THE DEFENDANT:  Well, I've been trying to, but you've
25  been denying them, so --

1          THE COURT:  Well, what I have told you is if you want
2   to make -- let's start fresh.  Other than the statement of
3   facts of the offense itself, is there anything about your
4   personal history that you believe is incorrect?
5          THE DEFENDANT:  No, everything is fine.
6          THE COURT:  All right.  Have a seat then, sir.
7          I'll find that the Guideline calculation is accurate.
8   It's actually hard to swallow that you received three points
9   for acceptance of responsibility and that no one has moved to
10  have that withdrawn given your post-plea activities, but I am
11  not going to disturb that without a motion.
12         So, that leaves your Offense Level total at 33, and a
13  Criminal History Category I, and a Guideline range of 135 to
14  168 months.
15         I will hear from the Government on sentencing.
16         MS. LUCK:  Your Honor, the Government has outlined
17  our position fairly well in our paper.  Again, in this matter
18  the evidence was overwhelming, as we've already reviewed in the
19  prior sentencing event for his co-defendant.
20         In this particular case, as the Court is well aware,
21  this particular defendant had also engaged in prostitution
22  activities previously.  He has exhibited on any number of
23  levels his manipulative behavior.  And in fact, his involvement
24  in this case was particularly egregious given the fact that he
25  was the one that decided to have sex repeatedly with the

1   15-year-old girl in order to "try her out for customers."
2              For any number of reasons, the Government believes a
3   sentence within the Guidelines is appropriate, and above the
4   mandatory minimum is certainly more than warranted in this
5   matter.
6              THE COURT:  All right, thank you.
7              Mr. Yamamoto.
8              MR. YAMAMOTO:  Your Honor, the Government received a
9   fairly comprehensive sentencing memorandum from the Public
10  Defender's Office.  Mr. Troccoli did an excellent job with his.
11  I really can't add much to what he said.
12             He has got no priors.  Not Mr. Troccoli, but Mr.
13  Holmes.  He had an extremely abusive childhood.  And probably
14  based on that childhood, he has had mental health issues that
15  have followed him throughout his life.  The record indicates a
16  number of consultations and evaluations throughout the years.
17             Frankly, looking at the case from this perspective at
18  this time, I think Mr. Holmes' incarceration has probably
19  affected some of his mental health abilities, and I think he is
20  getting worse.
21             Mr. Troccoli was able to work with him.  And in
22  talking with Mr. Troccoli, it seemed like Mr. Holmes at that
23  time was accepting responsibility for his actions, was able to
24  sit down with the Government and point out things that had
25  happened and be debriefed in the case.

1            Now he is on a different track.  And that track is
2   going in an entirely different direction from what has happened
3   before.  Which would seem to indicate that he's going to need
4   some additional mental health treatment and counseling.
5            For that reason, I would ask the Court to consider
6   Butner or some other facility for further evaluation and
7   treatment, perhaps change of medication, because it's not that
8   he is just being manipulative, as the Court saw the last time
9   we were in court, he has got issues that need to be addressed
10  and addressed outside the confines of this case.
11           So, for that reason, we ask the Court to sentence him
12  to a mandatory minimum ten years, and send him to Butner or
13  someplace else where they can give him treatment and see if
14  they can get him put on the right track.
15           THE COURT:  Do you want him to be evaluated for the
16  DRAP program -- the RDAP program as well?
17           MR. YAMAMOTO:  He doesn't seem to have a drug
18  problem.  We can have him evaluated, but there is no real
19  history of drug abuse.  He has used marijuana in the past, but
20  I think 2012 was the last time he used it.
21           THE COURT:  Yeah.  All right.
22           MR. YAMAMOTO:  So, I don't think they would take him
23  even if it was recommended.
24           THE COURT:  All right, thank you.
25           Mr. Holmes, come to the podium.  This is your

7

1  opportunity to tell me anything you would like to before I
2  sentence you.
3              THE DEFENDANT:  No, I ain't got nothing to say.  I'll
4  see you guys soon.
5              THE COURT:  I'm sorry?
6              THE DEFENDANT:  I'll just see you guys soon, that's
7  it.
8              THE COURT:  I can't hear what he said.  There is
9  nothing you would like to say at this time?
10             THE DEFENDANT:  No.  I mean, I kept trying to tell
11 you a couple weeks ago.  You denied it, so --
12             THE COURT:  Well, I asked you to put it in a written
13 pleading, and I haven't received one.  So, there is nothing for
14 me to consider.
15             You know, I read the report and I agree with Mr.
16 Yamamoto that the position that Mr. Troccoli filed on your
17 behalf was very thorough, and it identifies about as difficult
18 a childhood as --
19             THE DEFENDANT:  Can you give me one second?
20             THE COURT:  Yes, sir.
21             NOTE:  A discussion is had between the defendant and
22 his counsel.
23             THE DEFENDANT:  Can I ask a question?
24             THE COURT:  Yes, sir.
25             THE DEFENDANT:  When you say you needed that written

8

1  statement, you were saying that basically you wanted it
2  immediately, correct?
3              THE COURT:  Yes, sir.
4              THE DEFENDANT:  So, how do I -- how was I supposed to
5  give it to you?
6              THE COURT:  You talk to Mr. Yamamoto, he is your
7  attorney --
8              THE DEFENDANT:  He said I couldn't get it to you
9  until I guess I appeal after the fact of me getting sentenced.
10             THE COURT:  Well, you can -- I am going to sentence
11 you today.  If you have something you want to file, you can
12 file it.  It can be part of whatever post-conviction appeal you
13 want to make.  All right.  Whatever you've got, hold onto it.
14             I'm here today sentencing you for what you did on the
15 charges.  And as Mr. Yamamoto said, you pled guilty fairly
16 early on.  You agreed to cooperate.  You changed your mind.  I
17 then had a multiday trial with Ms. Chapman who pled not guilty.
18 The evidence against you is overwhelming.  What you did was
19 horrendous, just beyond the -- I mean, it's unimaginable what
20 you put that victim through.
21             You clearly were in charge of Ms. Chapman's actions.
22 You are an incredibly callous person.  And you took full
23 advantage of somebody who didn't have the wherewithal to resist
24 and was in a position of great vulnerability.
25             There is a reason why there is a ten-year minimum

1   mandatory for an offense such as this, because of how serious
2   the consequences are, and what you've done, and the continuing
3   pain and suffering that that victim will continue to feel for
4   many years to come.  Hopefully not, but predictably so.
5           I am going to sentence you to 168 months of
6   incarceration.  Five years of supervised release.
7           I will not impose a fine or costs of incarceration
8   because I find that you are unable to afford them.
9           I will impose a $100 special assessment.
10          The waiver of restitution by the victim.  So, there
11  will be no restitution.
12          I will order that you register with the Adam Walsh
13  Child Protection Safety Act in any state where you reside or
14  work.
15          As special conditions of your supervised release, I
16  will order that you get mental health treatment and evaluation.
17          I will give you credit for time you have served
18  awaiting sentencing.
19          I will ask the Bureau of Prisons to have you
20  evaluated for your mental health status.  And ask that you be
21  initially designated to Butner so they can do that mental
22  health evaluation.
23          Anything else?
24          THE DEFENDANT:  Can I object, please?
25          THE COURT:  Can you what?

10

1    THE DEFENDANT:  I need to object.
2    THE COURT:  Object?
3    THE DEFENDANT:  Yes.
4    THE COURT:  Okay.
5    THE DEFENDANT:  On the grounds that you just said you
6    gave me 14 years, right?
7    THE COURT:  Yes, sir.
8    THE DEFENDANT:  Give me that piece of paper there.
9    You gave someone -- just let me -- you gave someone
10   11 years, the same exact charge.  Right?  I only did this
11   apparently one time, correct?  This person right here did it --
12   THE COURT:  Well, you did it until you were caught.
13   You did it until you were arrested.
14   THE DEFENDANT:  I'm not done, I'm not done.  45 times
15   this person did that.  You gave this person 132 months.
16   THE COURT:  Every defendant --
17   THE DEFENDANT:  It's like you --
18   THE COURT:  Every defendant is different, Mr. Holmes.
19   THE DEFENDANT:  No, it's not every defendant.  It's
20   this one.
21   THE COURT:  All right.
22   THE DEFENDANT:  Are you serious?
23   THE COURT:  All right.
24   THE DEFENDANT:  This is you.  This is -- this is you
25   being a judge.

1       THE COURT:  This is the sentence that I have imposed,
2  I have looked at it carefully.
3       THE DEFENDANT:  You didn't.
4       THE COURT:  Every sentence that I impose is an
5  individual sentence based on --
6       THE DEFENDANT:  This person did this for two years,
7  man, for 45 times.  And you're telling me, man, 14 years is the
8  amount I am supposed to get off the break and I ain't even
9  really -- I ain't even pimped this female.  Are you kidding me?
10       THE COURT:  All right.  You've made your statement.
11  You're done.  You're excused.
12       MR. YAMAMOTO:  I'll be down --
13       THE DEFENDANT:  I'm done with you.  I'm not tripping
14  about this, dude.  You've got 48 hours.  You understand?
15       MR. YAMAMOTO:  To do what?
16       THE DEFENDANT:  You've got 48 hours.
17       MR. YAMAMOTO:  Thank you, Your Honor.
18       MS. LUCK:  Thank you, Your Honor.
19  --------------------------------------------------
                    HEARING CONCLUDED
20
21
22       I certify that the foregoing is a true and
23     accurate transcription of my stenographic notes.
24
                    /s/  Norman B. Linnell
25                  Norman B. Linnell, RPR, CM, VCE, FCRR